UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIZABETH GAMEZ,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:17-cv-0909-KJN

ORDER

Plaintiff Elizabeth Gamez seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") determining that plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 17, 20.) No optional reply brief was filed. For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 8.)

1

I.      BACKGROUND

Plaintiff was born on November 26, 1971; has a limited education; can communicate in English; and previously worked as a care provider, floor person/attendant, and fast food worker. (Administrative Transcript ("AT") 28.)[2] On December 30, 2014, plaintiff filed an application for DIB, alleging that she was unable to work as of November 27, 2014, due to cirrhosis, esophageal problems, thyroid problems, migraines, fatigue, and depression. (AT 17, 150, 174.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on November 29, 2016, and at which plaintiff, represented by counsel, and a vocational expert ("VE") testified. (AT 17, 31-54.) The ALJ subsequently issued a decision dated January 24, 2017, determining that plaintiff had not been disabled, as defined in the Act, from November 27, 2014, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 17-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 24, 2017. (AT 1-4.) Plaintiff subsequently filed this action on May 1, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly evaluated the opinions of plaintiff's treating physicians; and (2) whether the ALJ erred in finding that plaintiff's bilateral hand impairments were non-severe.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

---
[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

status requirements of the Act for purposes of DIB through December 31, 2019.  (AT 19.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since November 27, 2014, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments: biliary hepatitis, migraine, chronic esophageal spasm, achalasia,[4] obesity, and a depressive disorder.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent bending, stooping, crawling, kneeling, and crouching.  She is able to occasionally climb stairs.  She must avoid hazards (unprotected heights, moving machinery, etc.)  Mentally, she is not able to understand and remember complex or detailed instructions, but she can be expected to understand, remember, and carry out instructions involving up to 3-step commands.  She is limited to exercising only simple work-related judgments.  She is limited to no more than occasional changes to the routine work setting.  She is limited to performing routine, repetitive work in a stable environment.  She is limited to no more than occasional interactions with members of the public.

(AT 23-24.)  At step four, the ALJ determined that plaintiff was unable to perform any past relevant work.  (AT 28.)  Nevertheless, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  (AT 28-29.)  Consequently, the ALJ concluded that plaintiff had not been disabled, as defined in the Act, from

---

[4] "Achalasia is a rare disorder that makes it difficult for food and liquid to pass into your stomach.  Achalasia occurs when nerves in the tube connecting your mouth and stomach (esophagus) become damaged.  As a result, the esophagus loses the ability to squeeze food down, and the muscular valve between the esophagus and stomach (lower esophageal sphincter) doesn't fully relax — making it difficult for food to pass into your stomach.  There's no cure for achalasia.  But symptoms can usually be managed with minimally invasive therapy or surgery." See https://www.mayoclinic.org/diseases-conditions/achalasia/symptoms-causes/syc-20352850.

November 27, 2014, plaintiff's alleged disability onset date, through January 24, 2017, the date of the ALJ's decision. (AT 29.)

Plaintiff's Substantive Challenges to the Commissioner's Determinations

*Whether the ALJ improperly evaluated the opinions of plaintiff's treating physicians*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

The ALJ properly discounted the opinions of plaintiff's treating primary care physician, Dr. Manuel Diaz, and plaintiff's treating gastroenterologist, Dr. Robert Silva, who both opined, *inter alia*, that plaintiff could sit and stand/walk for less than 2 hours a day; could rarely to occasionally lift 20 pounds; was incapable of performing simple work tasks; was incapable of even low stress jobs and would have to take 20-to-30-minute breaks more than 10 times during a workday due to constant vomiting and burping; and would be absent from work more than 4 days per month. (AT 497-500, 502-05.) As the ALJ observed, neither doctor provided any rationale in support of his severe exertional limitations, despite numerous clinical findings of normal gait, strength, muscle tone/bulk, and range of motion by Dr. Diaz and other treating providers. (AT 26, 328, 347, 353, 360, 362, 365, 396, 399, 404, 411, 547, 561, 572, 591, 601-02, 615, 618, 624, 655.) The ALJ also found that both doctors' assessments appeared to rely heavily on plaintiff's subjective complaints. (AT 26; compare AT 498 & 503 [opining that plaintiff could not perform even simple tasks or low stress jobs] with AT 317, 392, 407, 418, 593, 601 & 626 [treatment records noting normal mental status, normal memory, normal attention and concentration, and normal judgment].) "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found that plaintiff had exaggerated the extent of her regurgitation symptoms,[6] she was noncompliant with her doctors' instructions to eat small meals and exercise,[7] and she testified that she could still perform her past

---

[6] The ALJ noted, consistent with an observation by one of the state agency physicians, that plaintiff's Body Mass Index ("BMI") in excess of 40, indicative of morbid obesity, did not support plaintiff's allegation that she struggled getting food down without drinking 2 bottles of water and threw up 3-4 times a day. (AT 25-26, 64.) Dr. Diaz himself questioned plaintiff's statements, observing that her "weight continues to go up even though she states that she vomits most of her food. This tells me that she is overeating…." (AT 357.)

[7] For example, despite Dr. Diaz's instructions for plaintiff to reduce her caloric intake and eat smaller meals, which would "greatly help her esophageal and abdominal problems," the record contains several references to plaintiff's failure to follow such instructions. (AT 360; see, e.g., AT 363 [Dr. Diaz noting that plaintiff "continues to eat a very large amount of food"] & AT 625

work at a casino if it were a non-smoking environment. (AT 24-26.) Notably, on appeal before this court, plaintiff does not challenge the ALJ's assessment of her credibility through any substantive briefing or argument. Thus, any such issue is waived. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Additionally, the ALJ properly discounted the headache questionnaires submitted by treating physicians Dr. Vona Diener and Dr. Myra Hu, which indicated, in part, that plaintiff experienced 25-27 headaches per month, each lasting 24 or more hours, and that plaintiff would be absent from work more than four days per month. (AT 507-10, 511-14.) As the ALJ noted, both questionnaires relied heavily on plaintiff's subjective account of the frequency and duration of her headaches, which the ALJ reasonably found not fully credible. Tommasetti, 533 F.3d at 1041. Indeed, at plaintiff's first of only three visits with Dr. Hu before the headache questionnaire was completed, Dr. Hu noted that plaintiff had about 8 headaches per month, "which does not meet criteria for chronic migraine." (AT 602.) Additionally, the reported frequency of plaintiff's headaches varied significantly. On December 16, 2014, plaintiff stated that she got a headache every 2 weeks, but had not had one for 6 months. (AT 351.) On May 20, 2015, she reported a migraine headache every 1-2 months. (AT 397.) On November 19, 2015, she complained of a one-week headache recurring monthly. (AT 543.) Therefore, in light of plaintiff's inconsistent reports as well as the ALJ's findings regarding plaintiff's credibility in general (as discussed above), it was not unreasonable for the ALJ to discount the headache questionnaires.

Finally, in giving less weight to the opinions of plaintiff's treating physicians, the ALJ also permissibly relied on the opinions of the consultative examiners. (AT 26-27.) Consultative examiner Dr. Sanford Selcon personally examined plaintiff and opined that she could perform light work. (AT 373-77.) Consultative examining psychologist Dr. Amy Eargle also personally evaluated plaintiff and opined that plaintiff's ability to perform simple and repetitive tasks was unimpaired, and that she had mild to moderate limitations with respect to social interaction,

---

[plaintiff reporting that she only at one meal a day and blended her foods, but simultaneously acknowledging that she still ate tacos with beans and rice].)

changes, and stress. (AT 382-88.) Because those providers personally examined plaintiff and made independent clinical findings, their opinions constitute substantial evidence on which the ALJ was entitled to rely.

In sum, the ALJ's evaluation of the treating physician opinions is supported by the record and by the proper analysis.

*Whether the ALJ erred in finding that plaintiff's bilateral hand impairments were non-severe*

At step two, the ALJ found that plaintiff's bilateral carpal tunnel syndrome, tenosynovitis,[8] and trigger fingers were not severe impairments. (AT 21-22.) Even assuming, without deciding, that plaintiff's hand impairments should technically have been deemed severe at step two, any error was harmless. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). In this case, because the ALJ found other impairments to be severe, the ALJ proceeded past step two in the sequential disability analysis. In subsequently formulating plaintiff's RFC, the ALJ was required to consider limitations attributable to both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2). However, no medical source in the record opined that plaintiff had any specific functional limitations related to her hand impairments. (See AT 64 [no manipulative limitations per state agency physician Dr. Jones], AT 79 [no manipulative limitations per state agency physician Dr. Pham], AT 377 [no manipulative limitations per consultative examiner Dr. Selcon], AT 500 [no significant limitations with reaching, handling, or fingering per treating primary care physician Dr. Diaz], & AT 505 [no significant limitations with reaching, handling, or fingering per treating physician Dr. Silva].) As such, the ALJ was not required to incorporate any such limitations into the RFC assessment.

////

////

---

[8] De Quervain's tenosynovitis is inflammation of tendons on the side of the wrist at the base of the thumb. See https://www.medicinenet.com/de_quervains_tenosynovitis/article.htm#what_are_causes_and_risk_factors_of_de_quervain#39s_tenosynovitis.

V.        CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

Dated:  August 14, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE